WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Kohlmann, et al., | No. CV-22-08207-PCT-SMM |
| Plaintiffs, | **ORDER** |
| v. | |
| Kathleen Larsen, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss. (Doc. 3). For the following reasons, the Court grants the Motion.

**I.   Background**[1]

Plaintiffs are David and Krisy Kohlmann, who live in Show Low, Arizona and have two adopted daughters, aged fourteen and seventeen. (Doc. 1-3 at 10, 14). In January 2022, the seventeen-year-old ran away from home and reported her adoptive parents to the Arizona Department of Child Safety ("DCS") on charges including neglect. (Id. at 14). DCS investigated these allegations and found David Kohlmann innocent. (Id.) The seventeen-year-old had a history of delinquency and had been encouraged in her delinquent behavior by a local family—the Meyers. (Id. at 13, 15). The Meyers allegedly involved Plaintiffs' children in "drinking and partying" and picked them up from school without the Plaintiffs' authorization. (Id. at 15). The Meyers also housed the seventeen-year-old when

---

[1] The Court attempts to piece together the facts as best it can, based on the allegations contained in *pro se* Plaintiffs' Complaint. (Doc. 1-3). All facts are presented in the light most favorable to Plaintiffs.

she ran away. (Id.)

On March 9, 2022, the seventeen-year-old appeared at juvenile court to apply for emancipation from her parents. (Id.). The court denied her emancipation application and deemed her to be a runaway. (Id.) She was arrested at the court. (Id.) That same day, she made accusations to DCS of abuse and neglect on the part of her adoptive parents. (Id.) Specifically, she described her adoptive parents' behavior as "violent[,] bizarre[,] erratic[,] unpredictable[,] incoherent[, and] totally inappropriate[,] and [] a threat to child safety." (Id. at 14). She also stated, "Dynamics in the household include a person[] [who has] establish[ed] lean power control or call horsing [coercion] over a caregiver in a way that impairs necessary supervision of care of the child and has caused or will likely cause[] serious to severe hard[ship] to the child's physical[,] mental[,] or emotional health." (Id.) Plaintiffs characterize this report as "false." (Id. at 13). The following day, the seventeen-year-old accused David Kohlmann of sexual abuse. (Id. at 14)

In response to these accusations, DCS opened a case file against Plaintiffs and removed the fourteen-year-old from the household on March 10, 2022. (Id. at 13-14). Defendant and DCS supervisor Katri Piecuch and Defendant and DCS case manager Kathleen Larsen were involved in removing the fourteen-year-old from the household. (Id. at 14). During that process, Piecuch did not retrieve the fourteen-year-old's inhaler and did not allow her to take her medication with her. (Id.) Seemingly while removing the fourteen-year-old from the home, Plaintiffs attempted to show Piecuch a video on a phone that depicted a boy belonging to the Meyers family drinking alcohol and smoking cannabis with two other children. (Id.) Piecuch did not accept this "proof." (Id.) Piecuch and Larsen refused to accept any "proof" that Plaintiffs had, surrounding the accusations made against them and the removal of their adopted daughters from the home. DCS—acting through Piecuch—did not place the children with a temporary kin placement. (Id.)

On June 1, 2022, Plaintiffs attended a video conference meeting with Defendants and DCS case managers Sylvia Turley and Christie F. Orona. (Id. at 15). Plaintiffs recorded the meeting. (Id.) Plaintiffs allege that Turley and Orona misrepresented Plaintiffs'

testimony in a report based on the meeting submitted to the juvenile court. (Id.) After removing the seventeen-year-old from the Plaintiffs' care, DCS placed her with the Meyers family.[2] (Id.)

On October 19, 2022, Plaintiffs filed a complaint in the Superior Court of Arizona in Navajo County. (Id. at 19). The Complaint seeks relief under 42 U.S.C. § 1983, for violations of Plaintiffs' rights under the First, Fifth, and Fourteenth Amendments. (Id. at 17-18). Plaintiffs seek a total of $1,675,000 in relief, including $700,000 in punitive damages. (Id. at 18).

On November 9, 2022, Defendants removed the case to this Court. (Doc. 1). On November 16, 2022, they filed a Motion to Dismiss. (Doc. 3). The Motion is fully briefed. (Docs. 4, 5).

**II.   Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint. Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation omitted). Rule 12(b)(6) must be read in conjunction with Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see also Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). A complaint need not provide detailed factual allegations but must provide more than "labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). It must contain factual allegations sufficient to raise a right to relief above the speculative level and to "state a claim that is plausible on its face." Id. at 555, 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). A court may dismiss a claim either because it lacks "a cognizable legal theory" or because it fails to allege sufficient facts to support a cognizable legal claim. See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996).

---

[2] Although the Complaint refers here to the "Miller home," the Court assumes this is reference to the Meyers family, based on the prior factual pleadings.

When a court is deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996) (citing Everest & Jennings v. American Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994)). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998).

Further, where the petitioner is *pro se*, particularly in civil rights cases, courts have an obligation "to construe the pleadings liberally and to afford the [plaintiff] the benefit of the doubt." Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc) (citing Jones v. Cmty. Redevelopment Agency, 733 F.2 646, 649 (9th Cir. 1984)).

### III. Discussion

Defendants contend that Plaintiffs' Complaint should be dismissed on three separate grounds: (1) the Complaint fails to state a claim upon which relief can be granted and fails to plead statements showing entitlement to relief; (2) Defendants are entitled to absolute and/or qualified immunity; and (3) "the lawsuit is an impermissible appeal of . . . state court judgments."[3] (Doc. 3 at 1).

#### A. Failure to State a Claim Upon Which Relief May Be Granted

Defendants argue that the facts alleged are insufficient to state any plausible federal claim for relief. (Id. at 3). In response, Plaintiffs simply state that "Defendants' conduct outlined in [the] . . . complaint violated the Plaintiffs' clearly established federally guaranteed rights under the US Constitution and statutes, which any reasonable DCS case managers in their positions would have been aware." (Doc. 4 at 2). In reply, Defendants argue that the Complaint fails to identify any acts by any Defendant depriving Plaintiffs of a constitutional right. (Doc. 5 at 2). The Court will address each allegation in turn.

---

[3] Defendants also argue that the Complaint should be dismissed because it failed to set out facts in numbered paragraphs, per state court rules. (Doc. 3 at 1). The Court admonishes Plaintiffs for failing to follow these rules and advises Plaintiffs that any future filings must comply with the Federal Rules of Civil Procedure—including Rule 10(b). However, the Court will not dismiss *pro se* Plaintiffs' Complaint for this deficiency alone.

- 4 -

1.     **Removal of Plaintiffs' Daughters**

The Complaint alleges that Defendant Larsen removed Plaintiffs' fourteen-year-old based on false reports of abuse and neglect made to DCS by the seventeen-year-old. (Doc. 1-3 at 14). This in itself, Plaintiffs appear to argue, represents a violation of Plaintiffs' First Amendment parenting rights to their daughter. (Id.) Plaintiffs also appear to argue that the removal of their daughters' violated their constitutional due process rights. (Id. at 16). Defendants argue that Plaintiffs' claims stemming from the removal of their daughters should be dismissed for failure to state a claim because "the Complaint fails to establish that Larsen knew, or should have known, that statements from the 17-year-old were inaccurate."

The First, Fourth, and Fifteenth Amendments protect parents' relationship with their children from "unwarranted state interference." Keates v. Koile, 883 F.3d 1228, 1236-38 (9th Cir. 2018) (quoting Roberts v. U.S. Jaycees, 468 U.S. 609, 619 (1984)). However, a state may remove children from their guardians' home either with judicial authorization or without judicial authorization if it has "information at the time of the seizure that establishes 'reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury.'" Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1106 (9th Cir. 2001)) (quoting Wallis v. Spencer, 202 F.3d 1126, 1138 (9th Cir. 2000)). "[S]erious allegations of abuse which are investigated and corroborated usually give[] rise to a reasonable inference of imminent danger sufficient to justify taking children into temporary custody." Ram v. Rubin, 118 F.3d 1306, 1311 (9th Cir. 1997) (citation omitted).

According to the Complaint, DCS was aware that the seventeen-year-old had runaway on multiple occasions and had received multiple allegations of abuse and neglect on the part of Plaintiffs, including an allegation of sexual abuse received the day before the fourteen-year-old was removed from the home. It is unclear whether or not the daughters were removed with judicial authorization. Crucially, however, there is no indication from the Complaint that DCS investigated or corroborated these allegations. Indeed, the only

reference to any investigation or attempt at corroboration is the claim that Plaintiff David Kohlmann had previously been found innocent of previous allegations made by the seventeen-year-old. (Doc. 1-3 at 6). As such, Plaintiffs have presented a plausible § 1983 claim based on a violation of their constitutional rights to familial association. See Keates, 883 F.3d 1228, 1238 (finding that a complaint plausibly alleged the violation of parents' right to familial association where a child was removed based on allegations that were neither investigated nor corroborated).

### 2.   Defendant Piecuch's Actions During Removal

The Complaint alleges that during the fourteen-year-old's removal from the Plaintiffs' home, Defendant Piecuch did not retrieve the child's inhaler and did not allow her to take her medication with her. (Doc. 1-3 at 14). Defendants argue that such allegations, even when taken as true, fail to state a plausible cause of action. (Doc. 5 at 3).

Plaintiffs simply do not provide a cognizable legal theory as to how Piecuch's alleged actions violated Plaintiffs' constitutional rights. As Defendants point out, Arizona law provides a § 1983 cause of action to *children* who have suffered harm by DCS employees' "deliberate indifference" in placing them in a dangerous home. (Id.; Weatherford ex rel. Michael L. v. State, 81 P.3d 320, 328 (Ariz. 2003)). Plaintiffs do not point to—and the Court has not found—any authority indicating that Plaintiffs, as parents, have a § 1983 cause of action based on Piecuch's alleged actions during the removal of the fourteen-year-old.

### 3.   Refusal to Accept Plaintiffs' "Proof"

Plaintiffs allege that Defendants Larsen and Piecuch refused to accept "proof" in the form of a video on Plaintiffs' cell phones of a boy from the Meyers family smoking cannabis with two other children. (Doc. 1-3 at 14).[4] Plaintiffs do not present any legal theory behind their claims that this violates their constitutional rights. It is unclear exactly what this video offers proof of. As best the Court can see, a video of a boy from the Meyers

---

[4] It is unclear from the Complaint if Plaintiffs attempted to provide any "proof" to Larsen and Piecuch other than this video. If so, Plaintiffs have not identified what this "proof" consists of, and the Court is therefore unable to infer that Defendants are liable based on any refusal to accept or consider it in their investigation or advocacy work.

- 6 -

family smoking cannabis could have been relevant information as to DCS' decision to place Plaintiffs' daughters in the Meyers household. But again, only children—and not their parents—have a claim when they have suffered harm because of DCS employees' "deliberate indifference" in placing them in a dangerous home. Weatherford, 81 P.3d at 328. Plaintiffs have failed to show how Defendants' refusal to accept or act on this evidence gives Plaintiffs themselves a cause of action under § 1983.

### 4.     Falsification of Evidence

Plaintiffs allege that Turley and Orona misrepresented Plaintiffs' testimony at a videoconference meeting, when writing up a report of that meeting that was submitted to the juvenile court. (Doc. 1-3 at 15). The Ninth Circuit has made clear that there is a constitutional due process right to be free from "deliberately fabricated evidence in civil child dependency proceedings where a parent's or child's protected familial liberty is at stake." Hardwick v. Cnty. of Orange, 844 F.3d 1112, 1117 (9th Cir. 2017) (italics removed).

Here, Plaintiffs have alleged that Defendants Turley and Oona fabricated evidence in a report that was involved in their civil child dependency proceeding, in which their daughters were ultimately removed from their household. These pleadings are sufficient to survive a motion to dismiss. Although Plaintiffs do not explicitly allege that the statements were fabricated deliberately or ultimately used in their juvenile court proceedings, Plaintiffs' Complaint must be construed liberally, and the Court is able to reasonably infer these specific allegations from the pleadings.

Defendants argue that the Complaint "fails to provide sufficient facts asserting (1) which information was false; and (2) who specifically had knowledge or should have known the statements were false." (Doc. 3 at 3-4). While the Complaint does not specify which parts of their testimony were fabricated, it nonetheless identifies the relevant report, the meeting at which their testimony was given, and the portion of the report that was fabricated—Plaintiffs' testimony from the meeting. The Complaint also clearly identifies who should have known the statements were false—Turley and Orona.

To survive a motion to dismiss, a Complaint need not provide detailed factual allegations—it need only state a claim that is plausible on its face. Twombly, 550 U.S. at, 555, 570. The Court finds—particularly when construing the Complaint liberally, as it must—that this claim is plausible on its face.

### 5. Placement in the Meyers Home

Finally, the Complaint alleges that Plaintiffs' daughters were placed in the home of the Meyers family. (Id.) Plaintiffs do not directly present a legal theory as to this allegation, instead providing a conclusory assertion that "Plaintiffs' parenting rights were violated by DCS with the placement of their . . . daughter in the Miller [sic] home . . . ." (Id.)

Even when construed liberally, Plaintiffs' allegations are insufficient in making a plausible claim for a violation of their own due process or First Amendment rights. As discussed earlier, Arizona law provides a § 1983 cause of action to *children* who have suffered harm by DCS employees' "deliberate indifference" in placing them in a dangerous home. (Id.; Weatherford, 81 P.3d at 328 (Ariz. 2003)). Plaintiffs' Complaint does suggest a plausible action based on the "deliberate indifference" displayed by Defendants in placing the daughters in a home that they should have known was a dangerous environment, based on the videos and information that Plaintiffs attempted to relay to Larsen and Piecuch. However, such a cause of action would belong to Plaintiffs' daughters, not themselves, and Plaintiffs do not allege a violation of their daughters' constitutional rights—only their own.

The Complaint does not point to any authority indicating that they, as parents, have a § 1983 cause of action based on the daughters' alleged placement in the Meyers home. As such, the Court is unable to draw the reasonable inference that Defendants are liable to Plaintiffs for their placement of the two daughters in the Meyers home. The Court will therefore dismiss Plaintiffs' claims based on their daughters' placement in the Meyers home for failure to state a claim upon which relief may be granted.

Towards the end of their Complaint, Plaintiffs list several cases that they argue support their claims for "Defendant[]s['] violation of their parenting and civil rights." (Id.

at 16). Plaintiffs do not, however, explain how these cases relate to their various allegations or provide pin cites. For example, alongside eight out-of-circuit cases is a reference to a Supreme Court case discussing visitation rights. (Id. (citing Troxel v. Granville, 520 U.S. 57 (2000)). Visitation rights are not at issue in the present case.

Further, the most factually pertinent case cited by Plaintiffs is one that appears to support Defendants' arguments more than their own. Burke v. Cnty. of Alameda, 586 F.3d 725 (9th Cir. 2009) (holding that a California sheriff reasonably relied upon a girl's abuse allegations when removing her from her parents' custody and acted reasonably in removing the girl from the mother's custody).

In sum, Plaintiffs have met the pleading standards for their allegations based on (1) Larsen's removal of their daughters from their home and (2) Turley and Orona's fabrication of evidence. Plaintiffs have failed to state a claim for causes of action based on (1) Piecuch's actions during the removal process; (2) Piecuch and Larsen's refusal to accept evidence of a video of a boy from the Meyers family smoking cannabis; and (3) their daughters' placement in the Meyers home. The Court will grant Defendants' Motion to Dismiss based on the failure to state a claim upon which relief may be granted for these latter three causes of action only.

### B.  Immunity

Defendants next argue that the Complaint should be dismissed because Defendants are entitled to absolute and/or qualified immunity. (Doc. 3 at 4).

#### 1.  Absolute Immunity

Defendants argue that they are entitled to absolute immunity as caseworkers participating in juvenile court proceedings. (Doc. 3 at 4; Doc. 5 at 4). In response, Plaintiffs note that sovereign immunity does not shield state officials sued in their personal capacities. (Doc. 4 at 2). Because Defendants are state officials being sued in their individual capacities, Plaintiffs argue, they do not qualify for sovereign immunity. (Id.)

Sovereign immunity and absolute/qualified immunity are, however, distinct legal concepts. Sovereign immunity, which may prevent state actors from being sued in their

official capacities, stems from the Eleventh Amendment. See Lewis v. Clarke, 581 U.S. 155, 162 (2017). Absolute or qualified immunity, on the other hand, derives from common law, and applies to state actors whose functions are critical to the judicial process. Beltran v. Santa Clara Cnty., 51 F.3d 906, 908 (9th Cir. 2008) (*en banc*) (*per curiam*). Plaintiffs' argument pertains to sovereign immunity, which Defendants do not raise as a defense here. As such, Plaintiffs do not address Defendants' arguments as to the applicability of absolute or qualified immunity.

Social workers have absolute immunity when they make "discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents." Miller v. Gammie, 335 F.3d 889, 898 (9th Cir. 2003) (citing Meyers v. Contra Costa Cnty. Dep't. of Soc. Servs., 812 F.2d 1154, 1157 (9th Cir. 1987)). They are also entitled to absolute immunity for activities or functions that are "part and parcel of presenting the state's case as a generic advocate." Cox v. Dep't of Soc. and Health Servs., 913 F.3d 831, 837 (9th Cir. 2019) (citing Hardwick, 844 F.3d at 1115). Conversely, social workers are not entitled to absolute immunity when making "discretionary decisions and recommendations that are not functionally similar to prosecutorial or judicial decisions"—for instance, when choosing which "particular home . . . a child is to go to . . . ." Id. Social workers are not entitled to absolute immunity for their investigatory conduct, Beltran, 514 F.3d at 908 (citing Kalina v. Fletcher, 522 U.S. 118, 126 (1997)), or if they have "fabricated evidence during an investigation . . ."[5] Id.

The claims against Defendant Larsen focus on her decision to remove Plaintiffs' daughters from their home. (Doc. 1-3 at 14). This is exactly the type of discretionary, quasi-prosecutorial decision that is entitled to absolute immunity.[6] Plaintiffs' only other claim

---

[5] In their Reply, Defendants quote Babcock v. Tyler, 884 F.2d 497, 501-02 (9th Cir. 1989) for the proposition that social workers are granted absolute immunity when investigating and participating in court proceedings. (Doc. 5 at 4). However, Babcock's wide view of absolute immunity has been narrowed by subsequent Supreme Court and Ninth Circuit cases, which instead focus on the particular function performed by the social worker, rather than the social worker's general relationship to a judicial proceeding. Miller, 335 F.3d at 892-93.

[6] To the extent that Plaintiffs challenge the ultimate decision to remove the daughters—as opposed to the decision to institute removal proceedings—such a challenge constitutes an impermissible appeal of a state court judgment, as discussed in Part C, below.

against Larsen is that she and Piecuch refused to accept Plaintiffs' "proof." (Id.) The refusal to accept or consider purported evidence is a discretionary quasi-prosecutorial decision that is "part and parcel of presenting the state's case as a generic advocate" and is thus also entitled to absolute immunity. As such, Larsen is entitled to absolute immunity and the claims against her must be dismissed.

The claims against Defendants Turley and Orona center around allegations that they "falsified . . . evidence" in a report the pair submitted to DCS. (Doc. 1-3 at 15). This appears to fall squarely within the rule that social workers are not entitled to absolute immunity for "fabricat[ion of] evidence during an investigation." Beltran, 514 F.3d at 908. To get around this, Defendants suggest that, through these allegations, Plaintiffs are making a judicial deception claim—and doing so inadequately by failing to meet the required elements. (Doc. 3 at 5). Defendants present a strong argument that Plaintiffs have not alleged sufficient facts to support a due process judicial deception claim. (Id. at 5-6). However, this argument is better suited to their earlier argument that Plaintiffs have failed to state a claim upon which relief may be granted. The rule is that social workers who face claims that they have "fabricated evidence" are not entitled to absolute immunity as to those claims. Beltran, 514 F.3d at 908. Whether or not Plaintiffs have adequately pled a claim for judicial deception is irrelevant. As such, Turley and Orona are not entitled to absolute immunity.

The allegations against Piecuch are that she did not retrieve the fourteen-year-old's inhaler, did not allow her to take her medication with her, did not accept "proof" offered by Plaintiffs, and later placed the daughters with the Meyers family rather than in temporary kin placement. (Doc. 1-3 at 14). These allegations are not quasi-prosecutorial in nature and Piecuch is not entitled to absolute immunity. The exception is the claim that Piecuch and Larsen did not accept Plaintiffs' "proof." As explained above, Piecuch is entitled to absolute immunity on this claim, and this claim only.

### 2. Qualified Immunity

If Defendants are not entitled to absolute immunity, Defendants argue, then they are

entitled to qualified immunity. (Doc. 3 at 6). Plaintiffs' Response does not address the issue of qualified immunity.

Qualified immunity shields state officials from money damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). Once a public official pleads qualified immunity, the plaintiff bears the burden of proving that both prongs are met. Isayeva v. Sacramento Sheriff's Dep't, 872 F.3d 938, 946 (2017). Courts can exercise discretion in deciding which prong to analyze first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

"'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that 'every reasonable official would understand that what he is doing' is unlawful." District of Columbia v. Wesby, 138 S.Ct. 577, 589 (2018) (quoting Ashcroft, 563 U.S. at 735). Though there need not be a prior "'case directly on point' for a right to be clearly established," there must be precedent that places the constitutionality of the officials' actions "beyond debate." White v. Pauly, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015)).

While courts may consider qualified immunity raised in a motion to dismiss, the Ninth Circuit has noted that [d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problem for legal decision making." Keates, 883 F.3d at 1234 (citing Kwai Fun Wong v. United States, 373 F.3d 952-956-57 (9th Cir. 2004)). For instance, a court may be "called upon to decide far-reaching constitutional questions on a nonexistent factual record." Kwai Fun Wong, 373 F.3d at 957. Courts assessing a motion to dismiss based on qualified immunity must "consider whether the complaint alleges specific facts, taken as true, to support the claim that the officials' conduct violated clearly established constitutional rights of which a reasonable officer would be aware 'in light of the specific context of the case.'" Keates, 883 F.3d at 1235 (quoting Mullenix, 577 U.S. at 12).

To aid their argument that Defendants are entitled to qualify immunity, Defendants

point to Daurio v. Ariz. Dep't of Child Safety, No. CV-18-03299-PHX-GMS, 2020 WL 6940812 (D. Ariz. Nov. 25, 2020). In Daurio, the plaintiff alleged that, during a DCS investigation into allegations made against him, he was excluded from a meeting, did not receive notice letters about DCS' contact with his spouse, and that exculpatory information he provided was disregarded. Id. at *1. At the summary judgment stage, the Court held that it was not clearly established that Plaintiffs' specific allegations constituted violations of his substantive due process right to familial association. Id. at *3.

### Larsen's Removal of Fourteen-Year-Old

As discussed earlier, Plaintiffs have—at least at the motion to dismiss stage—alleged sufficient facts to make out a plausible claim based on Larsen's removal of the fourteen-year-old from Plaintiffs' home.

The Court must therefore assess whether Plaintiffs' right to protection of their familial relationship from unwarranted state interference was 'clearly established' at the time of the removal. This right has been established for decades. See U.S. Jaycees, 468 U.S. at 619. Larsen is therefore not entitled to qualified immunity based on her decision to remove the fourteen-year-old from the household.

### Piecuch's Actions During Removal

As addressed above, Plaintiffs have not shown that Piecuch's actions during removal—failing to retrieve an inhaler and failing to allow the fourteen-year-old to bring her medication with her—violated Plaintiffs' constitutional rights. Our qualified immunity inquiry thus ends there. Plaintiffs have not met their burden and Piecuch is entitled to qualified immunity based on these allegations.

### Silvia Turley and Christie F. Orona

As discussed above, Plaintiffs have plead facts showing that Turley and Orona violated their constitutional due process rights. The remaining question, therefore, is whether the Complaint shows that this right was 'clearly established' at the time of the fabrication.

In 2017 in Hardwick, the Ninth Circuit ruled that there is a constitutional due

1 process right to be free from "deliberately fabricated evidence in civil child dependency
2 proceedings where a parent's or child's protected familial liberty is at stake." 844 F.3d at
3 1117. In 2022, Turley and Orona should have been aware that fabricating evidence related
4 to a juvenile court proceeding was a violation of a parent's constitutional rights. Thus,
5 Turley and Orona are not entitled to qualified immunity on the claims that they fabricated
6 Plaintiffs' testimony in a report submitted to the juvenile court.

Refusal to Accept Plaintiffs' "Proof"

The Court has found that Larsen and Piecuch are entitled to absolute immunity as to the claim that they refused to accept Plaintiffs' "proof." However, even if they are not entitled to absolute immunity, they are also entitled to qualified immunity.

Plaintiffs argue that Larsen and Piecuch's refusal to accept their "proof" violated their constitutional rights. They have not, however, attempted to show that there was a 'clearly established' right to have "proof" considered by DCS at the time. Indeed, Defendants point to Daurio, where the court found that it was not clearly established that the disregard of exculpatory information provided by the plaintiff constituted a violation of the plaintiffs' substantive due process rights. (Doc. 3 at 6-7; Daurio at *3). Plaintiffs also make a claim under their procedural due process rights but have failed to provide any case or authority showing that there was any 'clearly established' procedural due process right here.

Plaintiffs have not met their burden of pledging facts showing that Piecuch and Larsen are not entitled to qualified immunity based on their refusal to consider the video that Plaintiffs attempted to show them. As such, this claim against Piecuch and Larsen must be dismissed based on the DCS workers' qualified immunity.

**C.   State Court Proceedings**

Plaintiffs' allegations center around a juvenile court dependency proceeding. Defendants argue that the present lawsuit constitutes an impermissible attack on that proceeding. (Doc. 3 at 7). It is unclear from the Complaint whether the juvenile court proceeding is ongoing or has resulted in a final judgment. Because Defendants are also

unsure as to whether the juvenile court has entered a final judgment, they argue alternative abstention doctrines. (Id. at 8). If the state court has issued a final judgment, they argue, the Rooker-Feldman doctrine applies. If, however, the juvenile court proceedings have not resulted in a final judgment, then the Younger abstention doctrine applies. (Id. at 9). In either circumstance, they argue, this federal lawsuit constitutes an impermissible attack on the state court proceeding and must be dismissed with prejudice. (Id. at 7, 10). The Court addresses each argument in turn.

### 1. **Rooker-Feldman** Doctrine

Under the Rooker-Feldman doctrine, federal courts, such as this one, cannot review final state court judgments. MacKay v. Pfeil, 827 F.2d 540, 543 (9th Cir. 1987) ("Federal district courts . . . may not serve as appellate tribunals to review errors allegedly committed by state courts."). This includes custody decisions. See, e.g., Ybarra-Johnson v. Arizona, No. CV–14–00171–PHX–GMS, 2014 WL 5843358, at *3 (D. Ariz. Nov. 12, 2014) (finding that the court did not have jurisdiction to review the state court's final judgment regarding the removal of children). And though a federal court may exercise jurisdiction where plaintiffs bring allegations of extrinsic fraud, Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004), the exception only applies where the fraud "prevents a party from presenting his claim in court," Wood v. McEwen, 644 F.2d 797, 801 (9th Cir. 1981).

If the juvenile court has issued a final judgment, then this Court may not review it. Although Plaintiffs allege fraud in the form of Turley and Orona's alleged misrepresentation of their testimony, Plaintiffs do not allege facts allowing the Court to infer that this alleged fraud prevented them from presenting their claims in court.

### 2. **Younger** Abstention Doctrine

Under the Younger abstention doctrine, federal courts may not interfere with pending state judicial proceedings, "if the state proceedings are (1) ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims." H.C. v. Koppel, 203 F.3d 610, 613 (9th Cir. 2000) (quoting The San Remo

Hotel v. City & Cnty. of San Francisco, 145 F.3d 1095, 1103 (9th Cir. 1998)).

Here, the state proceedings—if they are ongoing—concern custody, which implicates the important state interest of family relations. See id. In addition, Plaintiffs have not alleged any facts that would allow this Court to reasonably infer that they are not being provided an adequate opportunity to present their claims in the juvenile court. As such, this Court may not interfere with the state juvenile proceeding, if indeed it is ongoing.

### III. Conclusion

Plaintiffs' Complaint must be dismissed for a variety of reasons. Plaintiffs have failed to present a claim upon which relief may be granted for a § 1983 claim based on all their allegations besides those concerning Larsen's decision to remove the daughters and Turley and Orona's alleged fabrication of evidence. In addition, Larsen is entitled to absolute immunity and Piecuch is entitled to both absolute and qualified immunity on Plaintiffs' claims based on her alleged refusal to accept evidence. Piecuch is also entitled to qualified immunity based on her actions during the removal of the fourteen-year-old. Finally, the Court must dismiss the Complaint as a whole as an impermissible appeal of a state court claim—either under the Rooker-Feldman doctrine or the Younger abstention doctrine.

Accordingly,

**IT IS HEREBY ORDERED granting** Defendants' Motion to Dismiss. (Doc. 3).

**IT IS FURTHER ORDERED dismissing without prejudice** Plaintiff's Complaint. (Doc. 1-3). Plaintiff may file an amended complaint no later than March 6 2023. Should Plaintiff fail to file an amended complaint by that deadline, this matter will be dismissed. Further, any such amended complaint must comply with the Federal Rules of Civil Procedure and the District of Arizona's Local Rules of Civil Procedure.

Dated this 6th day of February, 2023.

_____
Honorable Stephen M. McNamee
Senior United States District Judge